IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SANDRA LANIER, | ) | CV NO 06-00558 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT OWNERS OF VILLAS OF KAMALI'I; BOARD OF DIRECTORS OF ASSOCIATION OF APARTMENT OWNERS OF VILLAS OF KAMALI'I; AND CERTIFIED MANAGEMENT, INC., | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION

The Court heard Plaintiff's Motion on January 10, 2007.  Stan Levin, Esq., appeared at the hearing on behalf of Plaintiff; John D. Zalewski, Esq., and Philip L. Lahne, Esq., appeared at the hearing on behalf of Defendants.  After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Plaintiff's Motion for Preliminary Injunction.

## BACKGROUND

The Villas of Kamali'i (the "Villas") consist of 59 residential condominium units and common elements located in Princeville, Kauai. Sandra Lanier ("Plaintiff") owns condominium unit no. 34 in the Villas. The Association is a nonprofit organization comprised of the owners of the Villas and Certified Management, Inc., manages the Association. The Board of Directors administers the Villas.

> The By-laws of the Association provide that
>
> Except as otherwise provided by the federal Fair Housing Act (42 U.S.C. § 3601 et seq.), as amended by the Fair Housing Amendment Act of 1988, and the rules and regulations promulgated thereunder, as the same may be amended from time to time in the future, and except as otherwise permitted by the provisions of the Declaration, no apartment owner or occupant shall . . . make any additions or alteration to any common elements of the Project, . . . except in accordance with plans and specifications . . . prepared by a licensed architect, if so required by the Board, and approved by the Board . . . .

(Defs.' Ex. C at 18.)

Another section of the Bylaws provides that "[e]xcept as permitted under the Declaration, no apartment owner or occupant shall without the written approval of the Board install any wiring for . . . air-conditioner units, or other equipment or appurtenances whatsoever on the exterior of the Project or protruding

2

through the walls, windows, or roof of the Project." (Id. at 20.)  The House Rules provide that "[n]o apartment owner or occupant shall install any wiring or other device for electrical . . . installations . . . machines, or other equipment on the exterior of the building or protruding through the walls, windows, or roof thereof." (Defs.' Ex. E)

Condominium units were built with one of three options:  1) air conditioning ("A/C") installed, 2) ready for A/C to be installed,  or 3) without A/C and not A/C ready.  Plaintiff bought a condominium that had no A/C and was not A/C ready.  In January 2006, after inquiry from an owner who owned a condominium like Plaintiff's, the Site Manager wrote to all owners asking that they let the Board know if they were interested in installing A/C in their unit.  The Site Manager explained that all those interested could then "share the expense of having architectural drawings and specifications made so that all installations are accomplished in the same way meeting all code requirements . . . ."  (Defs.' Ex. H.)

Plaintiff and eight other owners responded that they were interested in A/C installation.  The cost for architectural drawings was set at $2,500, to be split among the nine interested owners.  Plaintiff volunteered to serve on the A/C Installation Committee to coordinate the collection of the $2,500 fee for the architectural drawings.  In March 2006, Certified sent an email to Plaintiff

3

explaining that it had a price for the architectural drawings of $2,500.  Certified further informed Plaintiff that

> [i]t is important that we have standard drawings and plans for insurance reasons.  If we ever have need for reconstruction, our insurance will re-build to the specifications and plans on record.  The plans can be ordered once we know the number of people who are willing to commit to splitting the cost.  We recommend that you get commitment from those interested and determine the amount each homeowner owes and collect their checks . . . . Then Certified Management can order the plans on behalf of the Villas of Kamali`i.

(Defs.' Ex. L at 2.)

On June 5 and 6, 2006, the Site Manager observed Plaintiff having work done at her condominium to install an A/C system, including a hole cut into the exterior wall.  The Site Manager told Plaintiff that she was required to wait to receive installation drawings from the architect and have the Board's approval.  When asked to delay the installation until she had Board approval, Plaintiff responded that she has health issues, that she was within her rights to install the A/C system, and that she was going ahead with the installation.  On June 6, 2006, the Board sent Plaintiff a letter requesting that she halt the A/C installation in her unit.  The Board quoted the relevant section of the By-Laws and meeting minutes informing Plaintiff of what was required in order to proceed with installation of

4

A/C. The Board stated that all owners are allowed to install A/C units provided that: "1) the unit is installed by a professional 2) the unit is installed in a like manner to those installed by the Developer [and] 3) the request is submitted in writing to the Board accompanied by drawings of the installation and assurances of items 1 and 2." (Defs.' Ex. P.)

On June 8, 2006, Plaintiff emailed the Board, requesting permission to install the A/C in an expedited manner since she has a breathing problem and the A/C unit will help her. Plaintiff suffers from asthma and her doctor has recommended that she install A/C. (Pl's. Ex. I.) Plaintiff's doctor believes that "delay in installation of an AC unit may result in an asthma exacerbation that could cause serious harm including need for emergency hospitalization." (Id.) Plaintiff claims that as a result of her condition, she was hospitalized on November 2 and 3, 2006, and that her asthma is getting worse.

Plaintiff hired an attorney, who wrote to the Board, arguing that she did not need Board approval to install the A/C, that she has complied with all of the Board's requirements, and that she has been denied an opportunity to install A/C in violation of the Fair Housing Act. Defendants' attorney responded that Board approval is required since the A/C proposed to be installed would protrude through the exterior wall. In addition, Defendants informed Plaintiff that she has

not been denied the opportunity to install A/C but that she must follow the procedures established for all such installations, which are: 1) installation by a properly licensed contractor; 2) installation in a like manner as units installed by the developer; and 3) prior written consent by the Board upon submission of plans and specifications by a licensed architect, permits, and confirmation that the installation will conform to items 1 and 2.

On September 5, 2006, Defendants reminded Plaintiff that in providing architectural drawings, she was not required to use Architects Hawaii, but that it might be less expensive to proceed with that firm since other owners have used them, which reduced their proportionate cost of the $2,500 total. On September 8, 2006, Plaintiff, through her new counsel, provided Defendants' counsel with the license number for her contractor who will complete installation of the A/C. Plaintiff refused to provide architectural plans and claimed that pursuant to the Fair Housing Act, she was not required to do so.

Defendants responded by requesting that Plaintiff focus her energy on complying with the application procedures that are required of all homeowners who desire to install A/C. Defendants again informed Plaintiff that she needed to submit architectural drawings and that while she did not need to utilize Architects Hawaii, it would be a dramatic cost savings for her to do so. Defendants also told

6

Plaintiff that she had yet to provide assurance that the installation would be in a like manner as units installed by the developer and that there were concerns with the permit that was pulled since the person who pulled the permit moved from the State and the connection between that person and the installer was unknown. Plaintiff responded by providing the documents used to obtain the permit and again claimed that Defendants must accommodate her under the Fair Housing Act. Defendants again informed Plaintiff that her submission was insufficient and asked her to provide information regarding the relationship between the person who pulled the permit and the work done so far, to confirm whether the installation of the A/C will be in a like manner as the units installed by the developer, and informed her that the documents used to obtain the permit did not constitute the required architectural drawings.

After filing complaints to HUD and Hawaii Civil Rights Commission in July 2006, Plaintiff filed a Complaint in this Court. On November 9, 2006, Plaintiff filed a Motion for Preliminary Injunction requesting that this Court order Defendants immediately to approve the installation of A/C in her condominium. Defendants filed their opposition on December 28, 2006, and Plaintiff filed her reply on January 4, 2007.

## STANDARD OF REVIEW

In order to obtain a preliminary injunction, the moving party must demonstrate either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in [the plaintiff's] favor." Am. Tunaboat Ass'n v. Brown, 67 F.3d 1404, 1411 (9th Cir. 1995) (brackets in original); see Warsoldier v. Woodford, 418 F.3d 989, 993-94 (9th Cir. 2005); Nike, Inc. v. McCarthy, 379 F.3d 576, 580 (9th Cir. 2004). These two formulas are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Oakland Tribune, Inc. v. Chronicle Pub Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985) (citations omitted). "Under any formulation of the test, [however,] the plaintiff must demonstrate that there exists a significant threat of irreparable injury." Id.

"In issuing an injunction, the court must balance the equities between the parties and give due regard to the public interest." High Sierra Hikers Ass'n v. Blackwell, 390 F.3d 630, 642 (9th Cir. 2004). It is within the court's discretion to grant or deny a motion for preliminary injunction. Oakland Tribune, Inc., 762 F.2d at 1376.

Where a party seeks more than maintaining the status quo, and seeks mandatory injunctive relief, the moving party must show that the law and facts clearly favor granting such relief. <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1320 (9th Cir. 1994); <u>D.D. ex rel. V.D. v. N.Y. City Bd. of Educ.</u>, 465 F.3d 503, 510 (2nd Cir. 2006) ("party moving for a mandatory injunction that alters the status quo by commanding a positive act must meet a higher standard"). This is because a "prohibitory injunction preserves the status quo [whereas] [a] mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." <u>Stanley</u>, 13 F.3d at 1320 (citation and internal quotations omitted).

## DISCUSSION

A.   <u>Likelihood of Success on the Merits</u>

Plaintiff argues that pursuant to their own By-laws, which cite the Fair Housing Amendments Act ("FHAA"), Defendants should accommodate Plaintiff's alleged handicap by waiving the requirement of Board approval for installation of A/C, since the A/C is necessary for her asthma.

"The FHAA imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." <u>United States v. Cal. Mobile Home Park Mgmt. Co.</u>, 29 F.3d 1413, 1416 (9th Cir. 1994) ("Mobile Home I");

McGary v. City of Portland, 386 F.3d 1259, 1261 (9th Cir. 2004).  In order to establish a discrimination claim for failure to provide a reasonable accommodation, a plaintiff must prove that "(1) [s]he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation."  Giebeler v. M & B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003) (citing United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir.1997)); see also 42 U.S.C. § 3604(f)(3)(B).  Defendants do not dispute that Plaintiff is handicapped as defined by the FHAA and that they knew of this fact.

Defendants contend that Plaintiff cannot establish the third or fourth element of her discrimination claim because she cannot prove that the accommodation of waiving Board approval is necessary to her enjoyment of the condominium because, she can utilize a portable A/C unit without Board approval. Plaintiff, however, testified that she purchased a portable A/C unit but it was not sufficient to cool her bedroom and it was difficult to exhaust the warm air produced by the unit out of the window.  (1/3/07 Lanier Decl. ¶ 3.)  Plaintiff asserts that she needs a large A/C system to accommodate her breathing problem.

10

Defendants next argue that Plaintiff cannot prove the third or fourth prong of the test because the requirement of Board approval, including obtaining architectural plans, has no relationship to Plaintiff's disability since her disability does not make it more difficult for her to satisfy the Board's requirements. Defendants argue that Plaintiff cannot prove the fourth prong of her claim because she continues to have the right to apply for and obtain Board approval and Defendants have not refused to allow A/C.  In her reply brief, Plaintiff asserts that she meets both prongs of the test because Defendants have attached a financial condition to the Board's approval of installation of her A/C unit.  Specifically, the $300 pro-rated cost of obtaining architectural drawings.

The Ninth Circuit has held that the FHAA "may require landlords to assume reasonable financial burdens in accommodating handicapped residents." Mobile Home I, 29 F.3d at 1417.  "Imposition of burdensome policies, including financial policies, can interfere with disabled persons' right to use and enjoyment of their dwellings, thus necessitating accommodation."  Giebeler, 343 F.3d at 1155, 1152 n. 6 (recognizing that "exceptions to neutral policies may be mandated by the FHAA where disabled persons' disability-linked needs for alterations to the policies are essentially financial in nature.").  Failure to waive financial burdens,

including generally applicable fees, could constitute discrimination under the FHAA in some circumstances. Mobile Home I, 29 F.3d at 1418.

Whether a fee must be waived as a reasonable accommodation must be determined on a case-by-case basis by making a fact-specific inquiry. Id. (remanding the case to determine whether the imposition of a guest parking fee of $1.50 per day or $25 per month on a handicapped resident who needed a health care aid on a daily basis had the required effect of denying the plaintiff an equal opportunity to use and enjoy her dwelling.) This is because there are

> many types of residential fees that affect handicapped and non-handicapped residents equally; such fees are clearly proper. Fees that merit closer scrutiny are those with unequal impact, imposed in return for permission to engage in conduct that, under the FHAA, a landlord is required to permit.
> Some generally applicable fees might be too small to have any exclusionary effect. Other fees might be sustained because to require their waiver would extend a preference to handicapped residents, as opposed to affording them equal opportunity. The waiver of others might impose an undue financial burden on the landlord.

Id. at 1417-18 (citations omitted). It is the plaintiff's burden to show that "but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." Giebeler, 343 F.3d at 1155. If there is no causal link between the defendant's policy of enforcing a generally applicable fee and the

plaintiff's disability, there is no obligation on the defendant to make a reasonable accommodation.  Id.

In McGary, the court found that the plaintiff "sufficiently alleged that the City interfered with the use and enjoyment of his home when it charged him for its nuisance abatement activities" by placing a lien on his home to compensate for the City's service of cleaning up his yard.  McGary, 386 F.3d at 1263.  The court noted that

> [t]he lien the City put on McGary's house prevents the full use and enjoyment of his property because it interferes with his use of the property as collateral to borrow money.  A sick man whose earning ability is impaired by disability might well need the borrowing power that his real estate gives him, as well as his right of occupancy.

Id. at 1264.

In Giebeler, the plaintiff was unemployed because of his disability.  Due to his unemployment, he was unable to meet the minimum financial qualifications for the apartment complex where he desired to live.  343 F.3d at 1145.  With his mother acting as a co-signer, the plaintiff could qualify to live in an apartment.  The complex owners, however, refused to bend their policy against allowing co-signers on a lease and thus, plaintiff could not live in the housing complex.  Id.  In determining whether the plaintiff could show that allowing his

mother to rent the apartment on his behalf was necessary to afford him an equal opportunity to use and enjoy the dwelling, the court stated that the causal link between the plaintiff's disability and the defendant's failure to accommodate was obvious - - the plaintiff "was unemployed because of his disability and therefore had insufficient income to qualify for the apartment." Id. at 1155.  Therefore, the court stated that the complex owners may need to relax their no cosigner policy in order to afford the plaintiff an equal opportunity to use and enjoy a dwelling at the complex. Id. at 1156.

      Here, the $300 fee (the proportionate share of architectural drawings), although a generally applicable fee, may have an unequal impact on handicapped persons, such as Plaintiff, who require a large A/C unit for a medical condition. However, Plaintiff has not proven that "but for" the waiver of the architectural drawing fee, she is unable to enjoy the housing of her choice.  Unlike the plaintiffs in Giebeler and McGary, the causal link between Defendants' failure to waive the fee for architectural plans and Plaintiff's disability is not obvious.  For example, this Court is not aware whether Plaintiff is unable to be employed due to her disability or whether Plaintiff's income is otherwise limited due to her disability. Instead, Plaintiff testified that she purchased a $500 portable A/C unit. Furthermore, Plaintiff is the owner of this newer condominium.  Moreover,

Plaintiff was aware as early as March 2006 that the Board would require her to contribute monetarily to the cost of architectural drawings, and Plaintiff presented no evidence or argument that she could not afford to do so because of her disability.

Accordingly, this Court cannot determine at this stage, given the state of the evidence, whether the policy of requiring architectural drawings for a fee hurts Plaintiff by reason of her handicap.  See Giebeler, 343 F.3d at 1153-1154 (the landlord's duty of reasonable accommodation is confined to rules, policies, practices, or services "that hurt handicapped people by reason of their handicap, rather than hurt them solely by virtue of what they have in common with other people such as a limited amount of money to spend on housing.").

In addition, Plaintiff has not even argued a causal link between her disability and the other requirements for Board approval, such as providing information regarding the relationship between the person who pulled the permit and the work done so far, and confirming whether the installation of the A/C will be in a like manner as the units installed by the developer.

Thus, Plaintiff has not shown by clear evidence that she is likely to succeed on her claim that Defendants have failed to reasonably accommodate her by waiving its Board approval.  However, with a further developed record, Plaintiff

may be able to establish a claim that the Board should reasonably accommodate her by waiving the $300 fee for the architectural drawings. Thus, Plaintiff has raised serious questions going to the merits of her claim.

B.  Irreparable Harm

Plaintiff argues that she will suffer irreparable harm if this Court does not issue a mandatory injunction requiring the Board to allow her to install A/C. Plaintiff states that her asthma condition has worsened, requiring hospitalization for two days in November 2006, and that her doctor has recommended that A/C be installed to prevent hospitalization. Defendants do not dispute that Plaintiff is threatened with irreparable injury.

Certainly, no monetary award or prevailing on the merits, can or will compensate Plaintiff for a worsening medical condition and/or hospitalization. Accordingly, this Court finds that Plaintiff has established the possibility of irreparable injury.

C.  Balance of the Hardships

"The hardship evaluation calls upon the Court to balance competing claims of injury and the effect that a grant or denial of injunctive relief would have on the parties and the public interest." Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua, 304 F. Supp. 2d 1245, 1261 (D. Haw. 2003).

16

Defendants argue that they have not caused Plaintiff's disability, nor have they perpetuated it since she has the right to install a portable unit without Board approval.  As set forth above, however, Plaintiff has testified that the portable unit is insufficient to meet her needs.

Defendants next argue that allowing Plaintiff to install A/C without meeting Board requirements would undermine the rights, duties and authority of the Board and the Association.  Defendants further argue that such an injunction would injure members who are in compliance with the requirements, and jeopardize the important safety and aesthetic purposes that the requirements serve.  Both parties assert that the public interest is to serve the purposes of the FHAA.

This Court finds that the harm to Plaintiff from not issuing an injunction outweighs the harm to Defendants because Plaintiff has established the threat of irreparable injury of further hospitalization and a worsening medical condition, whereas Defendants have only shown that their policies may be undermined.  However, this Court does not believe that Plaintiff has established that this Court must require Board approval.  As set forth above, the only aspect that Plaintiff may succeed upon, with the submission of proper evidence, is that the fee for architectural drawings should be waived.  Furthermore, as detailed below, with the limited temporary injunction that this Court is issuing, Defendants'

17

policies and purposes of their A/C installation requirements will not be completely undermined, as this Court is only requiring that they temporarily waive the fee for the drawings, but is otherwise requiring that Plaintiff completely comply with all Board requirements for installing A/C.

D.      Injunction

Since this Court has found that Plaintiff has established the possibility of irreparable harm, serious questions going to the merits, and that the balance of the hardships tips decidedly in her favor, this Court hereby orders Defendants to waive Plaintiff's pro-rated portion of the fee for architectural drawings (subject to possible reimbursement by Plaintiff as set forth below), promptly obtain architectural drawings, and allow Plaintiff to move forward with installing her A/C as long as she has complied with the Board's requirements.  Specifically, Plaintiff must provide the information to the Board regarding the relationship between the person who pulled the permit and the work done in her unit so far, confirm whether the installation of the A/C will be in a like manner as the units installed by the developer, ensure that the installer will install the A/C in compliance with the architectural drawings, and comply with any other Board requirements.

Because the Board has an obligation to waive the fee, this Court orders that the Board proceed immediately in obtaining the architectural drawings

required, since Defendants have stated that they already have the names of the other residents who are interested and presumably can collect the money from those residents.

If Plaintiff does not present this Court with evidence of a causal link between her disability and the fee for the architectural drawings on or before the hearing on Defendants' summary judgment motion, filed December 18, 2006, then Plaintiff shall be required to reimburse Defendants the pro-rated portion of the fee for architectural drawings.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 12, 2007.



_____
David Alan Ezra
United States District Judge

Lanier v. Association of Apartment Owners of Villas of Kamali`i, et al., CV No. 06-00558 DAE BMK; ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION