IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SANDRA LANIER, | ) | CV NO 06-00558 DAE BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF VILLAS OF | ) | |
| KAMALI'I; BOARD OF | ) | |
| DIRECTORS OF ASSOCIATION | ) | |
| OF APARTMENT OWNERS OF | ) | |
| VILLAS OF KAMALI'I; AND | ) | |
| CERTIFIED MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF VILLAS OF | ) | |
| KAMALI'I, BY ITS  BOARD OF | ) | |
| DIRECTORS, | ) | |
| | ) | |
| Counterclaim Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SANDRA LANIER, individually and | ) | |
| as Trustee of the Sandra W. Lanier | ) | |
| Revocable Living Trust, | ) | |
| | ) | |
| Counterclaim | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING WITHOUT PREJUDICE COUNTERCLAIM PLAINTIFF
ASSOCIATION OF APARTMENT OWNERS OF KAMALI'I'S MOTION FOR
<u>SUMMARY JUDGMENT</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions and the supporting and

opposing memoranda, the Court GRANTS Defendants' Motion for Summary

Judgment and DENIES WITHOUT PREJUDICE Counterclaim Plaintiff

Association of Apartment Owners of Kamali'i's (the "Association" or

"Counterclaim Plaintiff") Motion for Summary Judgment.

<u>BACKGROUND</u>

The Villas of Kamali'i (the "Villas") consist of 59 residential

condominium units and common elements located in Princeville, Kauai.  Sandra

Lanier ("Plaintiff") owns condominium unit no. 34 in the Villas.  The Association

is a nonprofit organization comprised of the owners of the Villas and Certified

Management, Inc., manages the Association.  The Board of Directors administers

the Villas.

The By-Laws of the Association provide that

Except as otherwise provided by the federal Fair Housing
Act (42 U.S.C. § 3601 et seq.), as amended by the Fair
Housing Amendment Act of 1988, and the rules and
regulations promulgated thereunder, as the same may be

2

amended from time to time in the future, and except as
otherwise permitted by the provisions of the Declaration,
no apartment owner or occupant shall . . . make any
additions or alteration to any common elements of the
Project, . . . except in accordance with plans and
specifications . . . prepared by a licensed architect, if so
required by the Board, and approved by the Board . . . .

(Defs.' Ex. C at 18.)

Another section of the By-Laws provides that "[e]xcept as permitted

under the Declaration, no apartment owner or occupant shall without the written

approval of the Board install any wiring for . . . air-conditioner units, or other

equipment or appurtenances whatsoever on the exterior of the Project or protruding

through the walls, windows, or roof of the Project." (Id. at 20.)  The House Rules

provide that "[n]o apartment owner or occupant shall install any wiring or other

device for electrical . . . installations . . . machines, or other equipment on the

exterior of the building or protruding through the walls, windows, or roof thereof."

(Defs.' Ex. E)

Condominium units were built with one of three options:  1) air

conditioning ("A/C") installed, 2) ready for A/C to be installed,  or 3) without A/C

and not A/C ready.  Plaintiff bought a condominium that had no A/C and was not

A/C ready.  In January 2006, after inquiry from an owner who owned a

condominium like Plaintiff's, the Site Manager wrote to all owners asking that they

3

let the Board know if they were interested in installing A/C in their unit.  The Site

Manager explained that all those interested could then "share the expense of having

architectural drawings and specifications made so that all installations are

accomplished in the same way meeting all code requirements . . . ."  (Defs.' Ex. H.)

Plaintiff and eight other owners responded that they were interested in

A/C installation.  The cost for architectural drawings was set at $2,500, to be split

among the nine interested owners.  Plaintiff volunteered to serve on the A/C

Installation Committee to coordinate the collection of the $2,500 fee for the

architectural drawings.  In March 2006, Certified sent an email to Plaintiff

explaining that it had a price for the architectural drawings of $2,500.  Certified

further informed Plaintiff that

> [i]t is important that we have standard drawings and
> plans for insurance reasons.  If we ever have need for
> reconstruction, our insurance will re-build to the
> specifications and plans on record.  The plans can be
> ordered once we know the number of people who are
> willing to commit to splitting the cost.  We recommend
> that you get commitment from those interested and
> determine the amount each homeowner owes and collect
> their checks . . . . Then Certified Management can order
> the plans on behalf of the Villas of Kamali`i.

(Defs.' Ex. L at 2.)

4

On June 5 and 6, 2006, the Site Manager observed Plaintiff having work done at her condominium to install an A/C system, including a hole cut into the exterior wall. The Site Manager told Plaintiff that she was required to wait to receive installation drawings from the architect and have the Board's approval. When asked to delay the installation until she had Board approval, Plaintiff responded that she has health issues, that she was within her rights to install the A/C system, and that she was going ahead with the installation. On June 6, 2006, the Board sent Plaintiff a letter requesting that she halt the A/C installation in her unit. The Board quoted the relevant section of the By-Laws and meeting minutes informing Plaintiff of what was required in order to proceed with installation of A/C. The Board stated that all owners are allowed to install A/C units provided that: "1) the unit is installed by a professional 2) the unit is installed in a like manner to those installed by the Developer [and] 3) the request is submitted in writing to the Board accompanied by drawings of the installation and assurances of items 1 and 2." (Defs.' Ex. P.)

On June 8, 2006, Plaintiff emailed the Board, requesting permission to install the A/C in an expedited manner since she has a breathing problem and the A/C unit will help her. Plaintiff suffers from asthma and her doctor has recommended that she install A/C. Plaintiff's doctor believes that a delay in

installation of an A/C unit may result in an asthma exacerbation that could cause serious harm including need for emergency hospitalization.  (Id.)  Plaintiff claims that as a result of her condition, she was hospitalized on November 2 and 3, 2006, and that her asthma is getting worse.

Plaintiff hired an attorney, who wrote to the Board, arguing that she did not need Board approval to install the A/C, that she has complied with all of the Board's requirements, and that she has been denied an opportunity to install A/C in violation of the Fair Housing Act.  Defendants' attorney responded that Board approval is required since the A/C proposed to be installed would protrude through the exterior wall.  In addition, Defendants informed Plaintiff that she has not been denied the opportunity to install A/C but that she must follow the procedures established for all such installations, which are:  1) installation by a properly licensed contractor; 2) installation in a like manner as units installed by the developer; and 3) prior written consent by the Board upon submission of plans and specifications by a licensed architect, permits, and confirmation that the installation will conform to items 1 and 2.

On September 5, 2006, Defendants reminded Plaintiff that in providing architectural drawings, she was not required to use Architects Hawaii, but that it might be less expensive to proceed with that firm since other owners

have used them, which reduced their proportionate cost of the $2,500 total.  On

September 8, 2006, Plaintiff, through her new counsel, provided Defendants'

counsel with the license number for her contractor who will complete installation

of the A/C.  Plaintiff refused to provide architectural plans and claimed that

pursuant to the Fair Housing Act, she was not required to do so.

        Defendants responded by requesting that Plaintiff focus her energy on

complying with the application procedures that are required of all homeowners

who desire to install A/C.  Defendants again informed Plaintiff that she needed to

submit architectural drawings and that while she did not need to utilize Architects

Hawaii, it would be a dramatic cost savings for her to do so.  Defendants also told

Plaintiff that she had yet to provide assurance that the installation would be in a

like manner as units installed by the developer and that there were concerns with

the permit that was pulled since the person who pulled the permit moved from the

State and the connection between that person and the installer was unknown.

Plaintiff responded by providing the documents used to obtain the permit and again

claimed that Defendants must accommodate her under the Fair Housing Act.

Defendants again informed Plaintiff that her submission was insufficient and asked

her to provide information regarding the relationship between the person who

pulled the permit and the work done so far, to confirm whether the installation of

the A/C will be in a like manner as the units installed by the developer, and informed her that the documents used to obtain the permit did not constitute the required architectural drawings.

After filing complaints to HUD and Hawaii Civil Rights Commission in July 2006, Plaintiff filed a Complaint in this Court alleging that Defendants discriminated against her in violation of the Fair Housing Act by refusing to accommodate her disability by allowing her to install an A/C unit.  (Compl. ¶ 10, 23.)  On November 21, 2006, the Association filed a counterclaim against Plaintiff, seeking injunctive relief and attorneys costs and fees alleging that Plaintiff's failure to comply with the Board's documents and making alterations to common elements without pre-approval forced the Association to retain legal counsel.

On December 18, 2006, Defendants filed their Motion for Summary Judgment.  On January 23, 2007, the Association filed its Motion for Summary Judgment.  Plaintiff filed an opposition on March 1, 2007, and Defendants and the Association filed a joint reply brief on March 8, 2007.

On January 12, 2007, this Court granted Plaintiff's Motion for Preliminary Injunction.  In determining whether Plaintiff was likely to succeed on the merits of her claim for failure to accommodate, this Court found that the only aspect that Plaintiff may possibly succeed upon is that the Board should waive the

fee for architectural drawings due to her alleged financial hardship, if Plaintiff

could prove a causal link between her disability and her financial condition.[1]

(Order Granting Prelim. Inj. at 15-16.)  Therefore, this Court held that Defendants

must

> waive Plaintiff's pro-rated portion of the fee for
> architectural drawings (subject to possible reimbursement
> by Plaintiff as set forth below), promptly obtain
> architectural drawings, and allow Plaintiff to move
> forward with installing her A/C as long as she has
> complied with the Board's requirements.  Specifically,
> Plaintiff must provide the information to the Board
> regarding the relationship between the person who pulled
> the permit and the work done in her unit so far, confirm
> whether the installation of the A/C will be in a like
> manner as the units installed by the developer, ensure
> that the installer will install the A/C in compliance with
> the architectural drawings, and comply with any other
> Board requirements.

(Order Granting Prelim. Inj. at 18.)  This Court further ordered that since the only

aspect that Plaintiff may succeed upon on the merits of her claim is that the Board

---

[1] In their Reply brief, Defendants state that this Court *sua sponte* raised the issue of Plaintiff's financial hardship.  Defendants, however, are mistaken. Plaintiff raised the issue of the imposition of a financial burden in pages 9 through 16 of her reply brief filed in support of her motion for preliminary injunction and in her Complaint at paragraphs 10 and 15.  Plaintiff also asserted that she is elderly, disabled and living on a fixed income.  Furthermore, in her opposition to the instant motions, Plaintiff specifically claims "[t]here is a real causal link here because these plans are not only too costly for a retired school teacher living on a fixed income . . . Quite simply, the plans were too costly and burdensome for this disabled plaintiff to afford . . . ."  (Pl.'s Opp'n at 12.)

should waive the architectural fee, Plaintiff was required to present to this Court

evidence of a causal link between her disability and the fee prior to the hearing on

the instant motions.

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); <u>see</u> <u>also</u> <u>Porter v. California Dept. of Corrections</u>, 419 F.3d 885, 891

(9th Cir. 2005); <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000).

A main purpose of summary judgment is to dispose of factually unsupported

claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  <u>See</u> <u>id.</u> at

323.  A moving party without the ultimate burden of persuasion at trial–usually,

but not always, the defendant–has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  <u>Nissan Fire &</u>

<u>Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial"and  may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

A.    Defendants' Motion for Summary Judgment

Plaintiff brought a claim for violation of the Fair Housing Amendments Act ("FHAA") based upon Defendants' alleged failure to accommodate her handicap. Specifically, Plaintiff asserts that Defendants violated the FHAA by denying her request for reasonable accommodation, which would have allowed her to install the A/C unit without having to obtain expensive, burdensome and unnecessary architectural plans.

12

To establish a discrimination claim for failure to provide a reasonable accommodation under the FHAA, a plaintiff must prove that "(1) [s]he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Giebeler v. M & B Assocs., 343 F.3d 1143, 1147 (9th Cir. 2003) (citing United States v. Cal. Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997)); see also 42 U.S.C. § 3604(f)(3)(B).

It is undisputed that Plaintiff meets the first two prongs of this test. Defendants, however, argue that Plaintiff cannot meet the third or fourth prong of the test because they never prevented her from installing A/C and only asked that she comply with the Board requirements, as expected of all other residents. Plaintiff asserts that the Board requirements include a financial burden by requiring her to pay for architectural plans, and this financial burden discriminates against her on the basis of her disability. Plaintiff also asserts that having to obtain Board approval in general, discriminates against her on the basis of her disability.

A defendant's failure to waive financial burdens, including generally applicable fees, can constitute discrimination under the FHAA in some

13

circumstances.  <u>United States v. Cal. Mobile Home Park Mgmt. Co.</u>, 29 F.3d 1413,

1418 (9th Cir. 1994) ("Mobile Home I").  The plaintiff has the burden of

establishing that "but for" the accommodation of waiving a generally applicable

fee, "they likely will be denied an equal opportunity to enjoy the housing of their

choice."  <u>Giebeler</u>, 343 F.3d at 1155.  In order for the defendant to be obligated to

make a reasonable accommodation, Plaintiff must show a causal link between the

defendant's policy of enforcing a generally applicable fee and the plaintiff's

disability.  <u>Id.</u>  This is because there are

> many types of residential fees that affect handicapped
> and non-handicapped residents equally; such fees are
> clearly proper.  Fees that merit closer scrutiny are those
> with unequal impact, imposed in return for permission to
> engage in conduct that, under the FHAA, a landlord is
> required to permit.
> 	Some generally applicable fees might be too small
> to have any exclusionary effect. Other fees might be
> sustained because to require their waiver would extend a
> preference to handicapped residents, as opposed to
> affording them equal opportunity.  The waiver of others
> might impose an undue financial burden on the landlord.

<u>Mobile Home I</u>, 29 F.3d at 1417-18. (citations omitted).

In <u>McGary v. City of Portland</u>, the court found that the plaintiff

"sufficiently alleged that the City interfered with the use and enjoyment of his

home when it charged him for its nuisance abatement activities" by placing a lien

on his home to compensate for the City's service of cleaning up his yard.  386 F.3d

1259, 1263 (9th Cir. 2004).  The court noted that

> [t]he lien the City put on McGary's house prevents the
> full use and enjoyment of his property because it
> interferes with his use of the property as collateral to
> borrow money.  A sick man whose earning ability is
> impaired by disability might well need the borrowing
> power that his real estate gives him, as well as his right of
> occupancy.

Id. at 1264.

In Giebeler, the plaintiff was unemployed because of his disability.

Due to his unemployment, he was unable to meet the minimum financial

qualifications for the apartment complex where he desired to live.  343 F.3d at

1145.  With his mother acting as a co-signer, the plaintiff could qualify to live in

an apartment.  The complex owners, however, refused to bend their policy against

allowing co-signers on a lease and thus, plaintiff could not live in the housing

complex.  Id.  In determining whether the plaintiff could show that allowing his

mother to rent the apartment on his behalf was necessary to afford him an equal

opportunity to use and enjoy the dwelling, the court stated that the causal link

between the plaintiff's disability and the defendant's failure to accommodate was

obvious - - the plaintiff "was unemployed because of his disability and therefore

had insufficient income to qualify for the apartment."  Id. at 1155.  Therefore, the

court stated that the complex owners may need to relax their no cosigner policy in order to afford the plaintiff an equal opportunity to use and enjoy a dwelling at the complex. <u>Id.</u> at 1156.

Here, unlike the plaintiffs in <u>Giebeler</u> and <u>McGary</u>, Plaintiff has not proven that "but for" the waiver of the architectural drawing fee, she is unable to enjoy the housing of her choice. Although it is certain that Plaintiff needs an A/C unit, Plaintiff has presented no evidence to prove that an accommodation of waiving Board approval for the installation of her A/C is necessary. Indeed, since the filing of this Court's order granting the preliminary injunction, Plaintiff has installed an A/C unit with Board oversight. The only relevant argument that Plaintiff makes that could possibly be linked to her disability is that Defendants have attached a financial condition to the approval of installation of an A/C unit -- the $300 pro-rated cost of obtaining architectural drawings. However, Plaintiff has not provided evidence sufficient to show that her disability makes it more difficult for her to pay this fee. Specifically, Plaintiff's affidavit regarding her financial condition leaves much to be desired. For example, Plaintiff states that her monthly income is $4,624 and her expenses are $4,484, which puts her at a net of $140 a month. Accordingly, it appears at a minimum, that Plaintiff could bear the cost of $300, if paid on an installment basis.

16

Furthermore, Plaintiff does not explain in her affidavit how she was able to pay for the costs of the A/C unit she already installed, the cost of the $500 portable A/C unit that she previously purchased, or the costs of this litigation, including the $350 fee for filing the complaint in this case. Neither does Plaintiff provide information regarding assets, such as two real properties she appears to own on Kauai, in addition to the home she currently resides in, which have a combined tax assessed value of $827,500. Plaintiff also did not provide information regarding bank account balances.

Plaintiff's argument that the hand drawn plans she previously provided to the Board are adequate and that the architectural plans prepared by Architects Hawaii are useless is irrelevant to the issue at hand because the argument does not address whether having such a requirement prevents Plaintiff from enjoying her property because of her disability.

Moreover, although, in general, disabled persons need not use magic words to be deemed to have made a request for an accommodation, Plaintiff presented no evidence that she ever requested an accommodation of a waiver of the fee or that she had financial difficulties because of her disability and therefore could not afford to provide the required architectural plans. Indeed, Plaintiff was

17

aware as early as March 2006 that the Board would require her to contribute

monetarily to the cost of architectural drawings if she chose to use Architects

Hawaii, and Plaintiff presented no evidence or argument that she informed

Defendants that she could not afford to do so because of her disability.

Finally, Plaintiff has not even argued a causal link between her

disability and the other requirements for Board approval, such as providing

information regarding the relationship between the person who pulled the permit

and the work done so far, and confirming whether the installation of the A/C will

be in a like manner as the units installed by the developer.  Therefore, this Court

need not address whether such accommodation was reasonable or possible.

Accordingly, since Plaintiff has provided no evidence to establish that

"but for" the accommodation of waiving a generally applicable fee, or waiving

Board approval all together, she will be denied an equal opportunity to enjoy her

home, this Court GRANTS Defendants' motion for summary judgment, and

DISMISSES Plaintiff's complaint.

B.    Counterclaim Plaintiff's Motion for Summary Judgment

Counterclaim Plaintiff brought a cause of action against Plaintiff for

injunctive relief requesting that she be ordered to cease and desist from

18

constructing improvements in violation of the Board documents, to bring her unit

into full compliance with the documents that govern the Association and Villas,

and to complete remedial work including removal of any work that violated the

governing documents.  Counterclaim Plaintiff claims that Plaintiff's actions, such

as making changes to exterior walls without pre-authorization, caused it to retain

legal counsel and that she should therefore be required to pay its attorney's fees.

Without having filed a motion for preliminary injunction,

Counterclaim Plaintiff now moves for summary judgment.  Counterclaim Plaintiff

asserts that because, in the order granting the preliminary injunction motion filed

by Plaintiff, this Court held that Plaintiff has to comply with the governing

documents and procedures for installation of the A/C, that holding has become law

of the case, requiring that Plaintiff comply with all governing documents.

Counterclaim Plaintiff thus argues that it is entitled to summary judgment on Count

1 of its Counterclaim, which alleges that Plaintiff made additions and alterations to

common elements without obtaining written approval from the Board, in violation

of the By-Laws, and that Plaintiff refused to submit architectural plans for the A/C

unit, and Count 2, which seeks attorneys' fees and costs for having to hire an attorney.

Counterclaim Plaintiff's causes of action are purely state law claims. As Plaintiff's complaint has been dismissed, there is no federal claim at issue. Accordingly, this Court DENIES WITHOUT PREJUDICE Counterclaim Plaintiff's motion for summary judgment and DISMISSES WITHOUT PREJUDICE the counterclaims.  See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also Sevcik v. Unlimited Const. Servs., Inc., 462 F. Supp. 2d 1140, 1150 (D. Haw. 2006) (dismissing remaining state law claims).

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES WITHOUT PREJUDICE Counterclaim Plaintiff Association of Apartment Owners of Kamali'i's (the "Association" or "Counterclaim Plaintiff") Motion for Summary Judgment.  Plaintiff's complaint is

hereby DISMISSED WITH PREJUDICE and the counterclaims are DISMISSED

WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 16, 2007.



_____
David Alan Ezra
United States District Judge


Lanier v. Association of Apartment Owners of Villas of Kamali`i, et al., CV No.
06-00558 DAE BMK; ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND DENYING WITHOUT  PREJUDICE
COUNTERCLAIM PLAINTIFF ASSOCIATION OF APARTMENT OWNERS
OF KAMALI'I'S MOTION FOR SUMMARY JUDGMENT